The next case this morning is number 5-20-0157 Morris v. Casey General Store. Arguing for the appellant, Casey General Store, is Michael Hayes. Arguing for the appellee, Camilla Morris, is Tom Rich. Each side will have up to 15 minutes for their argument. The appellant will also have five minutes for rebuttal. You'll see the digital timekeeping device on my screen. When time has expired, I'll hit the gavel. Please remember, only the clerk can record these proceedings today. Good morning, counsel. I apologize, we're running a little late. We had some technical difficulties and then the last case took a little longer than expected. Are you all ready to proceed today? Yes, sir. Yes, your honor. Then go right ahead, Mr. Hayes. Thanks. Thank you, good morning, and may it please the court. This appeal involves two provisions of the Workers' Compensation Act, sections 8.2 and 19G. The judgment below should be reversed because the circuit court misapplied both of these statutory provisions. First, the circuit court did not have the disputed implant charge issue that was not addressed by the industrial commission, nor was it incorporated in the commission's approval of the settlement contract in this matter. Second, and getting beyond this threshold jurisdictional issue, the circuit court also erred in its interpretation of section 8.2A5, and further entered a judgment that was against the manifest weight of the evidence that was presented at trial. As I mentioned just a moment ago, the section 19G issue is a threshold jurisdictional question, so I'll address that just a very brief background overview about the Workers' Compensation Act may be helpful. As this court knows, I'm sure, the industrial commission is the exclusive forum for resolution of claims brought by an injured worker in this state, and the Workers' Compensation Act is very clear in many of its provisions that the industrial commission has exclusive jurisdiction to make all determinations, legal and factual, that relate to those kinds of matters. For instance, it makes the determination about whether the injury is causally related to the work, whether the injured worker's medical treatments were medically necessary, the amount and propriety of those medical charges, and ultimately the compensation that is to be awarded to an injured worker. The Act has two limited circumstances in which the circuit court has any jurisdiction. One of them, section 19F of the Act, it's not applicable here, but it does provide for a review by the circuit court of the commission's decision on any legal or factual issue. However, that challenge under 19F, which is in essence an appeal, has to be brought within 20 days of the commission's decision or award, which did not happen here. The only other provision in the Act where the circuit court has any jurisdiction in this area is the provision that brings us here today, section 19G. That provision, and it's quoted in length in the briefs, but I'll talk about it just briefly here with you now, is in essence an enforcement and a collection mechanism. It allows the circuit court, gives the circuit court special jurisdiction to to enter judgment on an award or a decision by the commission that involves, that provides for the payment of compensation. Are you suggesting then that the circuit court's only role in this is to enter a judgment in favor, in this case, of Morris for $44,000? It's not allowed to interpret in any way the settlement agreement or any particular, the terms of settlement provision in that agreement? No, Judge. Actually, the Morris's counsel relies on primarily does make clear that the circuit court has the ability to interpret and enforce the actual, in this instance, settlement contract. And in the Hageen case, as the briefs have discussed, in that matter, this court held that the circuit court can look behind the settlement contract to find out what preceded it. And in that instance, what preceded it was undisputedly unchallenged, unpaid medical bills. Okay. So here, by contrast, but the circuit court's authority under 19G does not extend, while the circuit court does have authority to interpret contracts, it does not have any jurisdiction or authority to interpret the act itself. And that's what distinguishes this matter so clearly from the Hageen case. Because in this matter, as the court has seen from the briefing, what the circuit court was called upon and did do was to interpret what section 8.2A5 means. And on this issue of what is a net manufacturer's invoice, and does a wholesaler's invoice qualify for that. In Hageen, the issue there, and the facts of Hageen need to be looked at also, I would suggest, Your Honor. Although we don't question and we've never taken the position that the circuit court couldn't look behind the settlement contract that said all medical bills have been paid. But had the court looked behind it, the court would have seen that there was a partial payment made on the implant charges at issue, and that the dispute involved construing what section 8.2A5 means, which is an interpretation of the act that the case law clearly prohibits. And would also find that that partial payment was made about a year before the settlement contract was entered into. And so when my client entered into the settlement contract and noted that there were no medical bills unpaid, that was its good faith belief. I know that Morse's counsel's position is that that was a mistake, and they believe that my client should bear that mistake. I don't believe that's correct. But yes, in answer to your question, Judge, Your Honor, the circuit court can interpret contracts. The Gassner case holds that, and the Hageen case that they rely upon holds that. But the circuit court can't get involved in an interpretation of what the act means and do ab initio, decide an issue ab initio, that the commission is the only party, the only entity, the only forum to address that issue. So are you also suggesting then that the settlement agreement wherein it was stated that all medical bills had been paid, when both parties signed off on that, that that now precludes them from coming back and saying that there was unpaid bills at that time? No, no, Judge, I'm not saying that it's preclusive. I'm not taking the position that the there's a forfeiture of rights as a result of the checking of that box on the settlement form. What I am saying, Your Honor, and what I believe the law supports here, is that the nature of the issue that the circuit court would have to address goes to the heart of whether the does Section 8.2A.5 mean on a net manufacturer's invoice? Does it mean what we say, the statute clearly says in its plain terms that you're talking about the manufacturer's invoice itself, or does it mean something different, as Morse and its counsel argue, that it means any to pay? So just so that I'm clear, in regard to the unpaid bill, which is the amount that Frontenac was charged and tried to recover 25% above for those medical implants, the question here is not whether there was an unpaid bill. Your argument is that it was argued to the Commission with regard to what was proper to pay for those implants, and that now the circuit court doesn't have the ability to relitigate that aspect of the case. No, Judge. Your Honor, actually, the issue about these implant charges was never addressed by the Commission. A partial payment was made that my client believed was consistent with the schedule, and so unlike Haygene, there was a payment made. It just short paid it, if you want to use that term, because they believed these charges were excessive. There was absolutely no challenge to that payment decision, and so the Commission, almost a year later when they signed off on the settlement contract, that issue had not been raised there, and so it hadn't been to which that issue was put, and under the clear case law here about the circuit court not being able to interpret the act as opposed to the settlement contract, which it does have authority to interpret, the court lacked jurisdiction, and for that, that's the this judgment should be reversed, because the court never had jurisdiction from the get-go in this matter. Okay, thank you. Mr. Hayes, if the court had the ability to interpret the contract, why couldn't it use the guidance of that Section 8 to determine how to enforce the contract? In other words, both parties, it seems, didn't realize there was a short pay at the time the contract was entered into, correct? Right, my client was aware that a partial payment had been made. It was not aware that that partial payment was disputed, Your Honor. Right, so that at the time there was this agreement for the Commission, both parties believed in good faith that payment had been made for Mr. Rich's client. It appears, yes. So if the court has, circuit court has the ability to interpret the settlement agreement, how is it to be guided if not through the statutory provisions? In other words, it's not interpreting it per se, but it's looking to the Act for guidance in how to interpret the contract. It can't interpret it in a vacuum, certainly. Well, Your Honor, I believe that if that interpret, so the contract, as we all know, doesn't bear on this issue at all. There's no discussion about implants, unpaid bills, anything like that. No, but it does guarantee the worker that the bills were paid and that the worker is not going to be exposed to a short pay or a shortfall, right? I don't know that I'd agree that it guarantees that. It says that there are no unpaid bills. So I follow where you're going with that, Judge. I'm not trying to be too... In other words, nobody wanted, well, at least Mr. Rich didn't want his client exposed to some small claims case where they're going to have to pay as a result of a short payment. The whole purpose of this Act is to conclude those matters. So how is the circuit court, I have the same question, how is the circuit court to be the one case that has been cited by Eppley's counsel, the Gassner case, that decision is clear that the circuit court can use common contractual principles to interpret the language of the contract, the circuit court go further and interpret the provisions of the Act that are in dispute. I don't believe it can, and that's why I'm in the jurisdiction. If I misspoke, I apologize. I'm not asking whether the court can interpret the Act. I'm asking, just as we would use custom and practice in interpreting a contract, here we have a worker's compensation Act. Why can't we look to the provisions as guidance in interpreting the contract, as in the case you just mentioned? Isn't that real? Are you saying that this case is very different, and that the court went further, the court went beyond looking to the contract and, in fact, interpreted the Section 8? Yes, Judge. I see my time's up, so I'll answer your question and then stop with your permission. Yes, the court went further. The court necessarily made a determination in entering judgment that Section 8.2A5 allows for reimbursement of wholesaler invoices, not manufacturer invoices. That's in paragraph 5 of the court's judgment order. The circuit court did more than just refer to the Act and what the plain language in the Act is. It resolved a disputed issue about whether a wholesaler invoice is compensable under Section 8.2A5, which plainly states that it allows for compensability of manufacturer's invoices. Thank you. With Presiding Justice Bowie's permission, if you'll indulge me, Mr. Hayes, I think if we get past that threshold question of jurisdiction, you make an argument that Frontenac cannot hold Ms. Morris responsible for further payment, and can you just address that very, very briefly for us, your argument in that regard? Yes, so under the Act, there's a limited right of medical providers who haven't been over to proceed directly against the injured worker. However, that provision does not allow a medical provider to seek recovery of expenses, or in this case, charges for implant products that were within the purview of what they sought reimbursement for in the worker's compensation case. So a medical provider can seek reimbursement from someone like Ms. Morris here for certain kinds of charges, but if they were charges that were in excess of what they were allowed to recover under the fee schedule, and that gets us back to what the fee schedule here means as to implant charges, they plainly are not allowed to, I'll choose my words carefully, they're not allowed to charge an excessive amount that's not recoverable under the fee schedule, get that knocked down, and get paid for what is appropriate under the fee schedule, and then bill them for the amount that was determined or is not compensable. So here, we believe that Ms. Morris faces no legal peril if the judgment here is reversed, and that Frontenac would not have a valid claim against her for overcharges on the implants. Thank you. Thank you, counsel. Ms. Gates, do you have any follow-up? One more. Mr. Hayes, I appreciate your argument, but that would be an affirmative defense if this woman got sued by Frontenac. I mean, you can't prevent Frontenac certainly from bringing the small claim, and then she would have to file an affirmative defense, which then would get us back to an interpretation of what is the net versus the wholesale price, right? And whether Frontenac got paid. Yes, Judge. Unfortunately, in our legal system, we can't preclude companies from filing inappropriate lawsuits, and it would be unfortunate that Ms. Morris would be put to issue. The way this should have been resolved, however, back to exclusive jurisdiction of the commission, is this issue should have been raised in the commission, decided there, and then we would have clarity as to everyone's positions. The circuit court's ruling on an issue beyond its jurisdiction doesn't, unfortunately, doesn't resolve that issue. And this issue may, if you reverse as I'm requesting today, this issue may end up going back and having her workers' compensation case reopened, if that's still possible, to have this dispute decided. But that's where, respectfully, it should and needs to be decided. Thank you. Thank you, Justice Bowie. Justice Barbera, any follow-ups with Mr. Hayes? No. Okay. Thank you, Mr. Hayes. Mr. Rich, you ready to proceed? I am, Your Honor. Thank you very much. Nice to see you all again. It's been a long time. May it please the court. Mr. Hayes, the Illinois Workers' Compensation Act is a remedial statute. It is put forth for the protection of injured workers. Mr. Hayes has used the phrase, my client, in this case. His client is not Casey's. His client is a company called Foresight, which was founded in 2013 and purchased by Paradigm in 2017, and has a website that says it lowers costs for implants by 73 percent by compiling its own database, selling it to third manufacturers, net cost, and what is reasonable and customary. This little dispute over, what, $5,000 goes at the very heart of Mr. Hayes's client's business model. That's why you don't see Neil Gifhorn defending Casey's and we've got Mr. Hayes. Now, Judge Cates asked an excellent question concerning what the ability of the circuit court cannot do. The circuit court, if they've got the power to interpret a contract, there's only one place to go for guidance to interpret that place, and that is the very Workers' Compensation Act itself. I tried cases in workers' comp land for a living. This case was tried. You think, well, wait a minute. This case was settled. No, it wasn't. This case was tried, Your Honors, on January 17th in Heron, Illinois, where I sat behind a plastic picnic table on a metal table. This is the case of Arbitrator Hemingway. Justices, you've tried workers' compensation cases, and you've heard them. They're not glamorous, but they're very important because it helps people get back to work and get well. In this case, the reason there was a trial was respondent, Casey's, had disputed causal connection. So, arbitrator Hemingway entered an award, and if I may quote, respondent is ordered to pay $17,621.11 per the bill set forth in Petitioner's Group Exhibit 1, subject to the medical fee schedule as provided in Section 8A and 8.2, and prospective medical care ordered by Dr. Raskis, pursuant to the same fee schedule. On the settlement contract in question in this case, the court, I know, Judge Gross, I know you justices have looked at the bottom of the first page, where it says, has any action been taken on this case before? And Mr. Gifhorn wrote, and it was him that drafted the contracts, and he candidly admitted that after I subpoenaed him. It says, see attached decision. That original decision is not just the law in the state of Illinois, it's the law of this case. Prospective medical care and treatment was ordered pursuant to Sections 8A and 8.2. Bills were ordered to be paid pursuant to Section 8A and 8.2. The bottom line, Your Honor, is this, is that these implant costs aren't being paid because Foresight and its for implants cheaper somewhere else, and we're going to sell them to third-party administrators, and we're going to use that to get doctors to take less, and we're betting that doctors, as Judge Cates so noticed, they're not going to go after their patients. They're not going to. I have 100 of these other cases ready to file, and it's becoming a nightmare in terms of, this is the price in Mount Vernon. This is the price in Carmi. People in Mount Vernon get more than Carmi. People in St. Louis get less, but when Foresight enters the picture, they have their own database, and it doesn't matter where you're from. If you're Good Samaritan Hospital, you're taking a haircut the same way as Frontenac Surgery Center does, and they're up for Camilla Morris, because I tell you what, unless I get penalties, I have to file a brief in the circuit court. I have to file a 19G petition. I have to likely appear three or four times, and for what? Nothing. Never mind the fact that Lori Tiemann from Frontenac Surgery Center had to come down and testify and waste her day, and I'd like you to direct you, please, on page 11 of my brief, and it says, quote, notice, this is what was given to Plaza Frontenac, excuse me, Plaza Frontenac, Frontenac Surgery Center. 4456, Foresight, charges for surgical implants are reviewed separately by Foresight Medical. Please direct inquiries regarding implant charges to Foresight. Nothing in there about Sections 8A and Section 8.2. Direct inquiries to Foresight. Why? Because it's their database that they're using. Page 12, their witness, Amanda Wheatley, flew up from Houston and said, well, you know, we don't direct insurance companies not to pay, but we sell them our codes, and in this case, on page 12, CCMSI, which is the third-party administrator, not even the insurance company, they followed Foresight's instructions. They didn't pay, and Ms. Wheatley says on page 13 of our appellate court brief, your honors, I don't know anything about the Illinois fee schedule, and quote, it shouldn't be overridden by our database. Respondent, in the first time this case was tried, stipulated that the charges incurred to date, $17,622.11, were reasonable and customary, and my client was treating with the same physician she was at the time she had her surgery. We only get to a dispute when there's an implant, and that's where Foresight compiles its database. They want Dr. Raskus, and they want Dr. Bernardi, and they want Dr. Robson, and they want Dr. Gornett to go to Lincoln, Nebraska, for their implants because it's cheaper. Judge Boyd, you live in southern Illinois, but you know what? We want you to go across the river to Cape Girardeau because their gas tax is less, even though the dealer that you deal with also repairs your car. It's convenient for you. It's five minutes away, but, your honor, we want you to drive to Cape Girardeau because it costs less. That's their argument. On page 32, Foresight is substituting its own database, and this boggles my mind. I know probably more about the Illinois fee schedule than some of the people that helped write it because my eyes are sore from thinking about it. Do you know how many those poor people that wrote that part of the act took months to put that together, and Foresight has taken one part of it, the implant part of it, and said, well, we're going to substitute our database for all your months and years of hard work. That medical fee schedule was implemented in 2007 as a result of a bill put into effect by the legislature of the state of Illinois, not a company from Tampa, Florida, who was bought by a company from Walnut Park, California. These are what our elected representatives have told us is to be paid to physicians in their GeoZip area, and if a bill is not reasonable and or not I can charge X for this. I'm sorry, the fee schedule governs it. I can charge Y for this. I'm sorry, the fee schedule governs it. It's the net manufacturer's invoice price, and your honors, I see that I have five minutes, 36 seconds. I'm going to finish with five minutes to go. The decision of arbitrator Hemenway was correct. The settlement document drafted by Mr. Giffhorn, working for respondent, if it contains an ambiguity, it's got to be construed against Mr. Hayes. Judge Gross heard three days of arguments and testimony. We came there three times, and what Foresight wants you to do is go over and above the plain meaning of the statute, what the legislature intended, and the meaning of the net manufacturer's invoice price, and on behalf of Camilla Morris and Frontenac Surgery Center and every other medical provider in Southern Illinois that has to go through this stuff, thank you for your time. Mr. Rich, I appreciate the fact that you're willing to leave four minutes and 40 seconds on the table, but I would like you to just touch on the jurisdictional argument that Mr. Hayes, in his brief, brings up, just to clarify for us your position. Well, number one, that Mr. Hayes cites the Hegene case. The guy's name was John Hagney. I should know, I represented him, and it clearly states that the circuit court has jurisdiction. Second, I might ask you, and I might ask you to ask Mr. Hayes, did he contest jurisdiction at the circuit court level? I don't think so. I think that Mr. Filbert, who did a fine job for a respondent in front of Judge Gross, never made that argument. In fact, he didn't. So, hopefully that answers your question, Justice Barberis. Thank you. Good to see you again. Thank you. Do you have any other questions, Justice Cates? Well, I'm a bit concerned because even though this is being raised for the first time on appeal, subject matter jurisdiction can't be waived. So, I'm wondering what you would say to that, Mr. Rich. Okay. I mean, are you of the opinion that the circuit court merely used Section 8, whatever those numbers are, to interpret the contract? Or are you arguing that the circuit court interpreted this section as Mr. Hayes is saying? No, Your Honor. It's the first one. And the court in Hagney v. Derrick Polling Construction, it says, and it's on page 17 of my brief, Your Honors, out of 36, the court's able to consider the circumstances surrounding the contract to determine whether a breach has occurred. Where a respondent has indicated in a settlement contract that's paid all medical expenses, it remains bound by said stipulation to pay the outstanding medical bills, which it claims it's paid. That is the direct language in John Hagney's case. Thank you. And those surrounding medical circumstances in this case would be that section of the compact that he's contesting. That's exactly correct, Your Honor. All right. Thank you so much. You're welcome. Anything else, Justice Barberis? No. Okay. Thank you, Mr. Rich. Mr. Hayes, any rebuttal? Thank you, Your Honor. Yes. Yes, please. So, Justice Cates, you correctly noted that subject matter jurisdiction can never be waived. In fact, Mr. Rich is mistaken. It was raised before the judgment was entered in the trial court. It was raised in the post-hearing briefing expressly, and it wasn't addressed in the court's ultimate judgment ruling. Just a brief comment. What I heard from in Mr. Rich's argument, and I have great respect for Mr. Rich and his expertise in workers' compensation law, was, as I would characterize it, more of an impassioned plea to avoid the legal issues here than really addressing what those about how section 8.285 allows for reimbursement of wholesaler invoices when the statute plainly says manufacturers' invoices. Also, counsel argued, as I heard him anyway, that somehow the arbitrator's award and the stipulation about $17,000 and that argument you heard has any bearing here. Again, I think it's important to put the chronology in perspective. The arbitrator's award was entered before Ms. Morris had the surgery at issue in which the implants were used, and while that surgery was clearly authorized by the arbitrator's award, the issue about how much it would cost and how much implants could be charged at weren't addressed in any way. Of course, they couldn't be. The surgery hadn't happened yet. The part of the story here involving the litigation before the arbitrator has no bearing at all, as I see it anyway, on these issues. Looking at that doesn't clarify or interpret anything in the ultimate settlement contract. The argument about we should interpret this contract against my client because my client's counsel in the workers' compensation case was the initial drafter of it. I need to point out that in the contract itself, and this is in the appendix at A14 in the terms of settlement, at the bottom of the first paragraph of that page, here's what it says. It says, quote, the parties to this agreement have mutually contributed to its drafting, and consequently, no provision of this agreement shall be construed against any party on the ground that such party drafted the provision. We have a disclaiming in the actual contract itself of the presumption that Morse's legal position is asking you to embrace. How is that relevant here? Where is the ambiguity in the contract? You both agree that nobody knew about this dispute at the time the agreement was signed. Where is the ambiguity here? Well, the ambiguity, my side has never argued that there's any ambiguity, Justice Cates. If you read Morse's brief, that's a central feature of their brief, and they try to embrace the Gassner case where that was a critical aspect of the court's interpretation of what that clearly that to the extent this court involves a determination on that issue, such a construction cannot be afforded here because of what the parties agreed to in the settlement contract. Finally, I'll close with this. Again, I heard no argument that about why under this, and they're essentially asking this court to disregard the word manufacturers in that statute and find any invoice can be reimbursed at 25% above that invoice amount. That's not what the act says. Finally, final point is that while Morse's counsel criticizes my client for disputing these invoices and the arguments about you shouldn't have to go over state lines to buy product and all of that, I would just note, and it's set forth at page 13 of my opening brief, the upcharges here were significant. This isn't you could buy gas for $1.15 on this side of the Illinois border, but you get it for $1.05 on the Missouri side. We have upcharges of four and a half times. We have each one of the implant charges it here were based on the evidence that was presented to the trial about what they cost elsewhere. This wasn't some minor slight difference between here or there. One of these products was charged at 450% what it had been sold for by a manufacturer in that same time period in that same area. Unless the panel has any further... Justice Cates, it looks like you're muted. I apologize for that. I was trying to be courteous. I'm looking at this chart that was in the briefs, and when you talk about these fees, if I look at just the cervical plate, $2,995 is the front neck price. The comparable price offered by the defendant was $660. Now, where do you buy that for $660? Well, the actual invoice and testimony about it is in the trial record, Your Honor, but as indicated here, the implant... Is it true what Mr. Rich said, that you'd have to go to another state to buy that plate? I don't know if that, as to this plate, is true or not. I know some of these comparisons were to Illinois, and one of them, and it may have been the cervical plate, was, I believe, and the record will be clear on this, and I apologize if I'm wrong, but one of them was... We're talking about downstate Illinois on this. One of them was a charge in St. Louis, in the St. Louis area. It wasn't you had to go to California to buy it. Or Nebraska. Or Nebraska. As we all know, medical providers don't actually travel to another state to buy them. They order them on the phone or over the internet. It's a bit of hyperbole, I think, about the burden of purchasing an implant product. The point here is that the evidence that was not rebutted, but not accepted clearly by the trial court, is that these aren't minor differences. You could get it someplace slightly cheaper. These were whopping markups. Thank you very much for your time and attention today. Justice Barberis, do you have any questions? No, I'm good. Thank you. All right. Thank you, gentlemen. Obviously, this matter will be taken under advisement, and we will issue an order in due course. Thank you all. Thank you, judges. Stay safe.